IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-426

No. COA20-411

Filed 17 August 2021

Haywood County, 18 CRS 51349-50, 18 CRS 643

STATE OF NORTH CAROLINA

v.

CORDERO DEON NEWBORN, Defendant.

Appeal by Defendant from judgment entered 25 October 2019 by Judge Thomas H. Lock in Haywood County Superior Court. Heard in the Court of Appeals 8 June 2021.

*Attorney General Joshua H. Stein, by Associate Attorney General Jarrett McGowan, for the State.*

*Joseph P. Lattimore for defendant-appellant.*

MURPHY, Judge.

¶ 1        When the charge of possession of a firearm by a felon is brought in an indictment containing other related offenses, the indictment for that charge is rendered fatally defective and invalid, thereby depriving a trial court of jurisdiction over it. *See State v. Wilkins,* 225 N.C. App. 492, 497, 737 S.E.2d 791, 794 (2013). When a trial court makes a conclusion of law while denying a motion to suppress, it must do so with the support of adequate findings of fact that resolve any material conflicts presented by the evidence.

¶ 2        Defendant was charged with possession of a firearm by a felon and two related offenses in a single indictment.  The State's failure to obtain a separate indictment for the charge rendered it fatally defective and invalid, and did not invoke the trial court's jurisdiction.  According to binding caselaw, we vacate Defendant's conviction for possession of a firearm by a felon.

¶ 3        Additionally, the trial court's ruling on Defendant's *Motion to Suppress* was based on improper findings of fact regarding a material conflict in the evidence of the firearm's accessibility.  Given the absence of appropriate findings of fact pertaining to this material conflict, the trial court improperly concluded that the firearm was readily accessible so as to objectively create probable cause that it was evidence of a crime.  We therefore remand this matter with instructions for the trial court to make adequate findings of fact resolving the material conflict regarding the firearm's accessibility presented by Defendant's *Motion to Suppress.*

¶ 4        Finally, because the trial court's findings on remand will directly impact the validity of Defendant's non-vacated convictions, Defendant's third issue on appeal regarding the trial court's omission of an actual knowledge requirement from its jury instruction on possession of a firearm with an altered/removed serial number, and related ineffective assistance of counsel claim, are not yet ripe for our consideration and are therefore dismissed without prejudice.

**BACKGROUND**

At approximately 11:30 p.m. on 25 April 2018 in Maggie Valley, an on-duty patrol officer, Sergeant Ryan Flowers, ran the registration plate of a vehicle driving on U.S. Highway 19 through his patrol vehicle's mobile data terminal ("MDT"). The MDT indicated that Defendant Cordero Deon Newborn was the registered owner of the vehicle and had a permanently revoked driver's license. Based on this information, Sgt. Flowers pursued the vehicle and checked the MDT for pending criminal cases, which reflected Defendant had four counts of misdemeanor driving while license revoked-not impaired revocation cases pending. After catching up with the vehicle, Sgt. Flowers initiated a traffic stop.

Sgt. Flowers verified Defendant was the driver of the vehicle. Immediately upon interacting with Defendant and his passenger, Samuel Nathanial Angram, III, Sgt. Flowers identified the smell of marijuana emanating from the vehicle. When he inquired about the odor, Angram reportedly stated "[t]here's none in here, man. I just smoked a little in the car a while ago." Citing "probable cause . . . [to] believe [] marijuana was located in the vehicle" based on the odor and Angram's admission, Sgt. Flowers decided to conduct a search of the vehicle, and called for backup.

Sergeant Jeff Mackey arrived on the scene. Angram indicated to Sgt. Mackey that there was a firearm underneath the passenger seat, which Sgt. Mackey located. While searching the driver's side of the vehicle–where the smell of marijuana was reportedly most pungent–Sgt. Flowers felt and visually identified the handgrip of a

pistol between the vehicle's center console panel and carpeting, and placed Defendant under arrest for carrying a concealed weapon in violation of N.C.G.S. § 14-269(a). Sgt. Flowers then removed the vehicle's plastic center console panel from the center and retrieved the firearm–a loaded, .45-caliber semiautomatic handgun that was missing a serial number on its frame and barrel.[1]

¶ 8 On 6 August 2018, Defendant was indicted for possession of a firearm by a felon in violation of N.C.G.S. § 14-415.1; possession of a firearm with an altered/removed serial number in violation of N.C.G.S. § 14-160.2(b); and carrying a concealed weapon in violation of N.C.G.S. § 14-269(a). In a separate indictment, Defendant was charged with attaining habitual felon status as defined by N.C.G.S. § 14-7.1.

¶ 9 On 11 March 2019, Defendant filed a pretrial *Motion to Suppress* any evidence seized during the traffic stop. The motion was heard and denied on 22 October 2019, after the trial court found that Sgt. Flowers described the firearm as "readily accessible." However, the trial court made no findings as to the firearm's readily accessible location. At trial, Defendant did not raise a renewed objection when materials pertaining to the firearm seized from the center console area were

---

[1] While Sgt. Flowers testified that he could not "recall whether [it was] on the roadside or after [he] transported [Defendant] to the detention facility[,]" his testimony established that at some point after he retrieved the firearm from the vehicle's center console area, he discovered that Defendant was a convicted felon.

introduced and admitted into evidence.

¶ 10    The jury found Defendant guilty of possession of a firearm by a felon, possession of a firearm with an altered/removed serial number, and carrying a concealed weapon. As a result of the guilty verdicts, Defendant pled guilty to attaining habitual felon status.[2] On 25 October 2019, the trial court entered judgment, and Defendant provided oral notice of appeal.

¶ 11    Defendant raises three issues on appeal: (A) the trial court lacked jurisdiction over the charge of possession of a firearm by a felon because it was not contained in a separate indictment as required by the governing statute; (B) the trial court plainly erred in denying Defendant's pretrial *Motion to Suppress*; and (C) the trial court plainly erred by failing to instruct the jury on the requirement of actual knowledge as an element of the offense of possession of a firearm with an altered/removed serial number.

## ANALYSIS

### A. Indictment for Possession of a Firearm by a Felon

¶ 12    "We review the sufficiency of an indictment *de novo*." *Wilkins*, 225 N.C. App.

---

[2] Defendant also pled guilty to a Class 3 misdemeanor of driving while license revoked-not an impaired revocation, but does not make any argument pertaining to that offense on appeal. His appeal of that conviction is therefore deemed abandoned. *See State v. Harris*, 21 N.C. App. 550, 551, 204 S.E.2d 914, 915 (1974) (stating that issues "not set out in [an] appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned"); N.C. R. App. P. 28(b)(6) (2021).

at 495, 737 S.E.2d at 793.  While Defendant failed to challenge his indictment for the charge of possession of a firearm by a felon at the trial court, "where an indictment is alleged to be invalid on its face, thereby depriving the trial court of its jurisdiction, a challenge to that indictment may be made at any time, even if it was not contested in the trial court." *State v. Wallace*, 351 N.C. 481, 503, 528 S.E.2d 326, 341, *cert. denied*, 531 U.S. 1018, 148 L. Ed. 2d 498, *reh'g denied,* 531 U.S. 1120, 148 L. Ed. 2d 784 (2000).

¶ 13        N.C.G.S. § 14-415.1(c) dictates "[t]he indictment charging [a] defendant [with possession of a firearm by a felon] shall be separate from any indictment charging him with other offenses related to or giving rise to [that] charge[.]"  N.C.G.S. § 14-415.1(c) (2019).

¶ 14        Defendant's charge of possession of a firearm by a felon was contained in a single indictment with two other charges: possession of a firearm with an altered/removed serial number and carrying a concealed weapon.  Defendant quotes N.C.G.S. § 14-415.1(c) and asserts these charges are "relate[d] to or giv[e] rise to" the possession of a firearm by a felon charge, given that all three charges pertain to the same weapon and arose from the same search.  In support of his contention, Defendant cites *Wilkins*, where we held the language of N.C.G.S. § 14-415.1(c) "mandates that a charge of [p]ossession of a [f]irearm by a [f]elon be brought in a separate indictment from charges related to it[.]"  *Wilkins*, 225 N.C. App. at 497, 737

S.E.2d at 794.

¶ 15        In *Wilkins*, the defendant was indicted for possession of a firearm by a felon and assault with a deadly weapon. *Id.* at 493, 737 S.E.2d at 793. Both charges were listed in the same indictment, referred to the same weapon, and arose from the same incident–the defendant's use of a firearm during a robbery. *Id.* at 496, 737 S.E.2d at 794. Giving "effect to the intent of the legislature as expressed in the statute's plain language[,]" we concluded the State's failure to obtain a separate indictment for that charge rendered it "fatally defective, and thus invalid." *Id.* at 497, 737 S.E.2d at 794. As a result, we held the trial court lacked jurisdiction over the charge of possession of a firearm by a felon, and vacated the defendant's conviction for the offense. *Id.*

¶ 16        In response to Defendant's arguments regarding the separate indictment requirement, the State urges that *Wilkins,* and any cases consistent with it, must be read in light of *State v. Brice*, where our Supreme Court addressed a special indictment provision contained in N.C.G.S. § 15A-928(b). *State v. Brice*, 370 N.C. 244, 249, 806 S.E.2d 32, 36 (2017). N.C.G.S. § 15A-928(b) requires, *inter alia*, that "[a]n indictment or information for the offense must be accompanied by a special indictment . . . ." N.C.G.S. § 15A-928(b) (2019). In *Brice*, our Supreme Court noted that while the special indictment provision was "couched in mandatory terms, that fact, standing alone, does not make them jurisdictional in nature." *Brice*, 370 N.C. at 253, 806 S.E.2d at 38. After "a careful examination of the language . . . , coupled with

an analysis of the purposes sought to be served[,]" our Supreme Court ultimately concluded that the special indictment provision in N.C.G.S. § 15A-928(b) was not jurisdictional in nature, and as a result, the defendant could not challenge an indictment's failure to comply with that special indictment provision for the first time on appeal. *Id.* The State argues we should apply this same reasoning to the present case to conclude that the separate indictment provision contained in N.C.G.S. § 14-415.1(c) does not constitute a jurisdictional requirement, and consequently, Defendant's challenge to the indictment has been waived because he raised it for the first time on appeal.

¶ 17 However, we must follow the well-established principle that "[w]here a panel of the Court of Appeals has decided *the same issue* . . . a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court." *In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) (emphasis added). Our Supreme Court's decision in *Brice* pertained to a special indictment provision in a completely different statute, while our decision in *Wilkins* concerned the same issue posed in the present case by Defendant: the separate indictment provision in N.C.G.S. § 14-415.1(c).

¶ 18 Consistent with our decision in *Wilkins*, we hold the State's failure to obtain a separate indictment for the offense of possession of a firearm by a felon, as mandated by N.C.G.S. § 14-415.1(c), rendered the indictment fatally defective and invalid as to

that charge. Accordingly, the trial court lacked jurisdiction over the charge of possession of a firearm by a felon. *See Wilkins*, 225 N.C. App. at 497, 737 S.E.2d at 794. Defendant's conviction for possession of a firearm by a felon in violation of N.C.G.S. § 14-415.1 is vacated.

## B. Motion to Suppress

Defendant also challenges the trial court's denial of his pretrial *Motion to Suppress*, and subsequent admission of the firearm seized from the center console of his vehicle into evidence at trial, on the grounds that the firearm was retrieved through an unreasonable search and seizure in violation of the United States and North Carolina constitutions. *See Mapp v. Ohio,* 367 U.S. 643, 655, 6 L. Ed. 2d 1081, 1090 (holding the Fourth Amendment of the United States Constitution applies to the states through the Due Process Clause of the Fourteenth Amendment), *reh'g denied,* 368 U.S. 871, 7 L. Ed. 2d 72 (1961); *State v. Garner,* 331 N.C. 491, 506, 417 S.E.2d 502, 510 (1992) ("Article I, Section 20 of [the North Carolina] Constitution, like the Fourth Amendment to the United States Constitution, prohibits unreasonable searches and seizures[.]"). After addressing whether Defendant properly preserved this matter for appellate review, we examine whether the trial court's *Order Denying Defendant's Motion to Suppress Evidence* made adequate findings of fact pertaining to the material conflict of the accessibility of the firearm seized from the center console area.

**1. Preservation**

Defendant filed a pretrial *Motion to Suppress* items seized during the 25 April 2018 search of his vehicle, which the trial court denied. However, Defendant failed to raise a renewed objection at trial when the State introduced the seized firearm, and photographs of it, into evidence. Accordingly, the issue was not properly preserved for appellate review. *See State v. Golphin*, 352 N.C. 364, 463, 533 S.E.2d 168, 232 (2000) (citation omitted) ("A defendant cannot rely on his pretrial motion to suppress to preserve an issue for appeal. His objection must be renewed at trial."), *cert. denied*, 532 U.S. 931, 149 L. Ed. 2d 305 (2001).

However, Defendant "specifically and distinctly" argues on appeal that the trial court's denial of his motion, and subsequent admission of the firearm into evidence, amounted to plain error. *See State v. Waring*, 364 N.C. 443, 508, 701 S.E.2d 615, 655 (2010) (marks omitted) ("In criminal cases, a question which was not preserved by objection nevertheless may be made the basis of an [appeal] where the judicial action questioned is specifically and distinctly contended to amount to plain error."), *cert. denied,* 565 U.S. 832, 181 L. Ed. 2d 53 (2011); *see also* N.C. R. App. P. 10(a)(4) (2021).

**2. Plain Error**

Our Supreme Court has held:

> For error to constitute plain error, a defendant must

> demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice–that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings.

*State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (marks and citations omitted). We "apply the plain error standard of review to unpreserved instructional and evidentiary errors in criminal cases." *State v. Maddux*, 371 N.C. 558, 564, 819 S.E.2d 367, 371 (2018) (reiterating the plain error standard from *Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334).

¶ 23 "In conducting our review for plain error, we must first determine whether the trial court did, in fact, err in denying Defendant's motion to suppress." *State v. Powell*, 253 N.C. App. 590, 594, 595, 800 S.E.2d 745, 748-49 (2017) (noting that, in a plain error analysis regarding the denial of a motion to suppress, we apply the normal standard of review to determine whether error occurred).

¶ 24 "The standard of review in evaluating the denial of a motion to suppress is whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law." *State v. Jackson*, 368 N.C. 75, 78, 772 S.E.2d 847, 849 (2015). "Competent evidence is evidence that a reasonable mind might accept as adequate to support the finding." *State v. Ashworth*, 248 N.C. App.

649, 651, 790 S.E.2d 173, 176, *disc. rev. denied,* 369 N.C. 190, 793 S.E.2d 694 (2016).

**a. Findings of Fact**

¶ 25        Defendant argues that the trial court made erroneous findings of fact in its *Order Denying Defendant's Motion to Suppress Evidence*, specifically contending that Findings of Fact 23 and 25 were not supported by competent evidence.  Finding of Fact 23 states:

> 23. That afterwards, [Sgt.] Flowers re-approached Defendant and asked him if there were any other firearms in the vehicle, to which Defendant replied there were not. [Sgt.] Flowers then began to search the vehicle.  He concentrated on the front driver's side floorboard and center console area because that is where the odor of marijuana smelled strongest to him.

The finding immediately preceding Finding of Fact 23 pertained to Sgt. Mackey's discovery of the first firearm underneath the vehicle's passenger seat.  Defendant claims Finding of Fact 23 inaccurately states that Sgt. Flowers began searching the center console area of the vehicle immediately after Sgt. Mackey's discovery of the first firearm, when Sgt. Mackey's testimony established both he and Sgt. Flowers conducted individual searches that bore no fruit prior to the search referenced in Finding of Fact 23.

¶ 26        However, the testimony Defendant references, where Sgt. Mackey stated "I searched it once; he searched it once because he started on the driver's side and I started on the passenger side[,]" does not establish a clear timeline for these searches.

This testimony could be reasonably construed to indicate these initial searches occurred prior to, or concurrently with, the search of the center console area by Sgt. Flowers referenced in Finding of Fact 23. Further, the language "[t]hat afterwards" merely indicates that Sgt. Flowers' discovery of a firearm on the driver's side of the vehicle occurred after Sgt. Mackey's discovery of a firearm underneath the passenger seat. This general timeline was not disputed and is corroborated by Defendant's own challenge on appeal.

Sgt. Mackey's testimony was "evidence that a reasonable mind might accept as adequate to support the finding" that Sgt. Flowers searched the driver's side of the vehicle and located a firearm in the center console area after Sgt. Mackey discovered a firearm underneath the passenger seat. *See Ashworth*, 248 N.C. App. at 651, 790 S.E.2d at 176. Finding of Fact 23 does not constitute an erroneous finding of fact.

Defendant also argues that Finding of Fact 25 was not supported by competent evidence. Finding of Fact 25 states:

> 25. That [Sgt.] Flowers then removed the driver's side, plastic center console panel from the center console. It took some effort, but *no tools were needed*. He located a Kahr model CW45 .45-caliber semi-automatic handgun in a natural void behind the panel.

(Emphasis added). Defendant challenges this finding of fact for "significantly downplay[ing] [the] difficulty [Sgt. Flowers had] in removing the console[,]" and further alleges there was no evidence at the suppression hearing to substantiate the

portion of the finding that states "no tools were needed." We agree that this portion of Finding of Fact 25 regarding no need for tools was not supported by competent evidence.

¶ 29        At the hearing on Defendant's *Motion to Suppress*, Sgt. Flowers testified that the center console's plastic covering "[p]retty much" popped right off, but also confirmed he "had to get on [his] hands and knees . . . [to] pull [it] loose[.]" He admitted it "took a little work" to remove the plastic panel, and stated he did not recall whether the center console had screws, or how it came loose. However, no further testimony or evidence relating to tools was given at the suppression hearing. It was only after the hearing, at trial, that Sgt. Flowers testified that he did not require special tools to remove the panel.

¶ 30        "[T]he facts supporting the trial court's decision to grant or deny a defendant's suppression motion will be established *at the suppression hearing* on the basis of testimony given under oath." *State v. Salinas*, 366 N.C. 119, 125-26, 729 S.E.2d 63, 68 (2012) (emphasis added) (marks omitted) (citing N.C.G.S. § 15A-977(d) (2011)). In reviewing the testimony presented at the hearing on Defendant's *Motion to Suppress*, there was no "evidence that a reasonable mind might accept as adequate to support the finding" that "no tools were needed" in Sgt. Flowers' removal of the center console panel. *See Ashworth*, 248 N.C. App. at 651, 790 S.E.2d at 176. Further, this portion of Finding of Fact 25 contradicts Sgt. Flowers' own testimony at the hearing on

Defendant's *Motion to Suppress*, where he stated that he did not recall whether the panel had screws or how it came loose.

Therefore, this challenged portion of Finding of Fact 25–"no tools were needed"–was unsupported by evidence presented at the *Motion to Suppress* hearing, and is not binding on appeal. *See State v. Otto,* 366 N.C. 134, 136, 726 S.E.2d 824, 827 (2012).

**b. Conclusions of Law and Denial of the Motion to Suppress**

We next determine whether–in the absence or presence of the aforementioned portion of Finding of Fact 25 and the trial court's other related finding of fact[3]–the

---

[3] Though not referenced by Defendant in his challenge on appeal, we note that the trial court's Finding of Fact 27, which states "on re-direct examination, [Sgt.] Flowers described the Kahr firearm as 'readily accessible' to someone who knew it was there, as he could feel it and see it without removing the panel[,]" cannot properly be considered as a finding of fact, as it reflects a mere recitation of testimony. *See In re: N.D.A.*, 373 N.C. 71, 75, 833 S.E.2d 768, 772 (2019) (marks omitted) ("We agree with the Court of Appeals that recitations of the testimony of [a] witness *do not* constitute *findings of fact* by the trial judge."); *State v. Lang,* 309 N.C. 512, 520, 308 S.E.2d 317, 321 (1983) ("Although . . . recitations of testimony may properly be included in an order denying suppression, they cannot substitute for findings of fact resolving material conflicts.").

Our review must be "limited to those facts found by the trial court and the conclusions reached in reliance on those facts, *not* the testimony recited by the trial court in its order." *State v. Derbyshire*, 228 N.C. App. 670, 679-80, 745 S.E.2d 886, 892-93 (2013) (emphasis added) (holding "mere recitation of testimony . . . is not sufficient to constitute a valid finding of fact"), *disc. rev. denied,* 367 N.C. 289, 753 S.E.2d 785 (2014). Accordingly, in determining whether the trial court made proper findings of fact as to the material conflict of the firearm's accessibility, we limit our review to the trial court's proper findings of fact. We further note that this recitation of Sgt. Flowers' testimony regarding his subjective opinion as to the firearm's accessibility, which the trial court erroneously designated as a finding of fact, cannot provide the objective probable cause necessary to conduct a warrantless search of the vehicle. *See State v. Burwell*, 256 N.C. App. 722, 733, 808 S.E.2d 583, 592 (2017) (citing

trial court's remaining findings of fact support its conclusions of law and denial of

Defendant's *Motion to Suppress.* In its order denying the motion, the trial court made

the following conclusions of law:

> 3. . . . [Sgt.] Flowers had reasonable and articulable suspicion of criminal activity to justify a motor vehicle stop based upon the information which he received from his MDT regarding the registration and driver's license information relating to [Defendant's vehicle]; . . . .
>
> 4. That the positive identification of Defendant as the driver . . . justified further detainment[.]
>
> 5. That immediately after engaging Defendant in Defendant's vehicle, [Sgt.] Flowers developed probable cause to conduct a warrantless search of the [vehicle] due to the "relatively strong" odor of marijuana emanating from the interior of the vehicle, particularly after the passenger's admission that marijuana had just been smoked. . . .
>
> 6. That the discovery of the first firearm under the passenger's seat by [Sgt.] Mackey provided additional probable cause to search the vehicle, as it supported a second violation, to wit: Carrying a Concealed Weapon . . . , and more concealed weapons may have been present.
>
> 7. That [Sgt.] Flowers' decision to search the [vehicle] and the subsequent search thereof − including the scope of that search − was reasonably-based upon the totality of the

*Devenpeck v. Alford*, 543 U.S. 146, 160 L. Ed. 2d 537 (2004)) ("[W]arrantless arrests are reasonable under the Fourth Amendment if there is objective probable cause to arrest for the violation of an offense."), *disc. rev. denied, appeal dismissed,* 370 N.C. 569, 809 S.E.2d 873 (2018); *see also State v. McClendon,* 350 N.C. 630, 636, 517 S.E.2d 128, 132 (1999) ("[F]or situations arising under [the North Carolina] Constitution, we hold that an objective standard, rather than a subjective standard, must be applied to determine the reasonableness of police action related to probable cause.").

circumstances, and such circumstances were sufficiently strong in and of themselves to establish probable cause for this search and the resulting arrest of Defendant for the charges of Possession of Firearm by Felon, Possession of a Firearm with Altered/Removed Serial Number, Carrying a Concealed Weapon, and Driving While License Revoked – Not Impaired Revocation.

8. That the stop, investigation, detention, and arrest of Defendant did not constitute a violation of the federal or state constitutions, and it was in compliance with the North Carolina Criminal Procedure Act contained in Chapter 15A of the North Carolina General Statutes.

Defendant argues the trial "court's conclusion that there was probable cause . . . was in conflict with the testimony of Sgt. Flowers."

¶ 33    Both the United States Constitution and our state constitution protect individuals from unreasonable searches and seizures, and evidence seized in violation of these constitutional protections must be suppressed. U.S. Const. amend. IV; N.C. Const. art. I, § 20; *see Garner*, 331 N.C. at 505-06, 417 S.E.2d at 510; *Mapp*, 367 U.S. at 655, 6 L. Ed. 2d at 1090.

¶ 34    We note that Sgt. Flowers' action of removing the center console constituted a separate search from the search for marijuana that was the lawful objective of his entry into the driver's side of the vehicle. *See Arizona v. Hicks*, 480 U.S. 321, 324-25, 94 L. Ed. 2d 347, 353-54 (1987) (holding an officer's "moving of [stereo] equipment . . . . constitute[d] a [search] separate and apart from the search for the shooter, victims, and weapons that was the lawful objective of [the police officer's] entry into the

apartment.").

¶ 35    Merely inspecting the portion of the firearm that came into Sgt. Flowers' view during the search for marijuana was not an independent search, as it did not produce an additional invasion of Defendant's privacy interest. *See id.* at 325, 94 L. Ed. 2d at 354. However, "taking action, unrelated to the objectives of the authorized intrusion, which exposed to view concealed portions of [the vehicle's] contents, did produce a new invasion of [Defendant's] privacy unjustified by the exigent circumstance that validated the entry." *Id.* The "distinction between looking at a suspicious object in plain view and moving it even a few inches is much more than trivial for purposes of the Fourth Amendment." *Id.* (marks omitted).

¶ 36    Therefore, it must be determined whether this independent search of the console area was reasonable. The lack of a relationship between Sgt. Flowers' search of the center console area and the initial entry to the vehicle does not render the search *ipso facto* unreasonable, as:

> That lack of relationship *always* exists with regard to action validated under the plain view doctrine[.] . . . It would be absurd to say that an object could lawfully be seized and taken from the premises, but could not be moved for closer examination. It is clear, therefore, that the search here was valid if the plain view doctrine would have sustained a seizure of the [firearm]. . . . [I]n order to invoke the plain view doctrine[,] . . . probable cause [to believe the item was evidence of a crime] is required.

*Id.* at 325-26, 94 L. Ed. 2d at 354-55 (marks omitted).

¶ 37        "Objects which are in the plain view of a law enforcement officer who has the right to be in the position to have that view are subject to seizure and may be introduced into evidence."  *State v. Hunter*, 299 N.C. 29, 34, 261 S.E.2d 189, 193 (1980).  Under the plain view doctrine:

> [P]olice may seize contraband or evidence if (1) the officer was in a place where he had a right to be when the evidence was discovered; (2) the evidence was discovered inadvertently; and (3) *it was immediately apparent to the police that the items observed were evidence of a crime* or contraband.

*State v. Graves,* 135 N.C. App. 216, 219, 519 S.E.2d 770, 772 (1999) (emphasis added).

¶ 38        Defendant does not challenge whether the officers had the authority to enter his vehicle to search for marijuana.  Thus, the first prong of the plain view doctrine is not at issue.  Additionally, there was testimony at the *Motion to Suppress* hearing supporting that Sgt. Flowers' initial discovery of the firearm occurred inadvertently–while searching for marijuana and reaching in and around the vehicle's center console area–and Defendant does not challenge whether the discovery occurred inadvertently, so the second prong of the plain view doctrine is also not at issue.

¶ 39        However, Defendant contends that the seizure does not comply with the third prong of the plain view doctrine and argues that it was not "immediately apparent" to Sgt. Flowers that the handgrip of the firearm constituted evidence of the crime of carrying a concealed weapon because it was not within easy reach and readily

accessible to Defendant.

¶ 40      "An item is immediately apparent under the plain view doctrine if the police have probable cause to believe that what they have come upon is evidence of criminal conduct." *State v. Haymond*, 203 N.C. App. 151, 162, 691 S.E.2d 108, 119 (marks omitted), *disc. rev. denied,* 364 N.C. 600, 704 S.E.2d 275 (2010). "The substance of all the definitions of probable cause is a reasonable ground for belief of guilt." *State v. Zuniga*, 312 N.C. 251, 261, 322 S.E.2d 140, 146 (1984) (marks omitted). "Probable cause exists where the facts and circumstances within [an] officer's knowledge and of which they had reasonable trustworthy information are sufficient in themselves to warrant a [person] of reasonable caution in the belief that an offense has been or is being committed." *Id.* (marks omitted).

¶ 41      "The essential elements of carrying a concealed weapon in violation of N.C.G.S. § 14-269(a) are: (1) [t]he accused must be off his own premises; (2) he must carry a deadly weapon; and (3) the weapon must be concealed about his person." *State v. Hill*, 227 N.C. App. 371, 380, 741 S.E.2d 911, 918 (marks omitted), *disc. rev. denied, appeal dismissed*, 367 N.C. 223, 747 S.E.2d 577 (2013). The weapon does not necessarily need to be concealed "on the person of the accused, but in such a position as gives him *ready access to it*[.]" *Id.* at 381, 741 S.E.2d at 918 (emphasis added). The weapon must be "concealed near, in close proximity to him, and within his convenient control and easy reach, so that he could promptly use it, if prompted to do

so by any violent motive." *State v. Gainey,* 273 N.C. 620, 623, 160 S.E.2d 685, 687 (1968).

¶ 42      In his testimony at the *Motion to Suppress* hearing, Sgt. Flowers stated the firearm was "pretty hard to get to[,]" and confirmed he had to get on his hands and knees to remove the plastic covering of the center console. However, Sgt. Flowers also testified that he believed "if you knew [the firearm] was there, you could get it out just by prying the panels [loose] without breaking it all the way off." He testified that he "could agree" with defense counsel that the firearm would not be readily accessible if the panel was not removed, but also said "[i]t could have been readily available. I did not have knowledge of how to pry that piece of material off. . . . I can't confirm whether it's easy or not easy to get to. I don't own the vehicle."

¶ 43      Based on this conflicting testimony, it is unclear what degree of difficulty Sgt. Flowers experienced in attempting to remove the center console panel. The contradictory evidence regarding this degree of difficulty is a material conflict requiring findings of fact, as establishing how difficult it was to remove the center console panel is a prerequisite to determining whether or not the firearm was "readily accessible" to create probable cause that the firearm constituted evidence of the crime of carrying a concealed weapon in violation of N.C.G.S. § 14-269(a).

¶ 44      The trial court's *Order Denying Defendant's Motion to Suppress Evidence* did not contain any findings of fact related to the degree of difficulty Sgt. Flowers had in

removing the center console panel and retrieving the firearm. As a result, the trial court failed to make necessary findings to resolve a material conflict presented by the evidence during the *Motion to Suppress* hearing: whether the firearm was within Defendant's "convenient control and easy reach, so that he could promptly use it," such that there was probable cause to believe it constituted evidence of the crime of illegally carrying a concealed weapon. *See id.*

¶ 45        Without resolving this material conflict through adequate findings of fact, the trial court's conclusions regarding probable cause are not supported. Further, without adequate findings of fact regarding the firearm's accessibility, the trial court could not properly rule on Defendant's *Motion to Suppress.*

**3. Necessary Findings on Remand**

¶ 46        The trial court's failure to make necessary findings of fact prevents us from conducting meaningful appellate review of the material conflict presented by the evidence, and this error was capable of sufficiently prejudicing Defendant. *See State v. Horner*, 310 N.C. 274, 279, 311 S.E.2d 281, 285 (1984) ("Findings and conclusions are required in order that there may be a meaningful appellate review of the decision."). We must remand for the trial court to make adequate findings of fact resolving whether or not the firearm was "readily accessible" to Defendant such that it objectively created probable cause to believe it constituted evidence of illegally carrying a concealed weapon. In making this determination, the trial court's findings

of fact must be limited to evidence adduced at the hearing on Defendant's *Motion to Suppress* and may not substitute later testimony or mere recitations of testimony at the *Motion to Suppress* hearing for findings of fact on the motion. *See Lang,* 309 N.C. at 520, 308 S.E.2d at 321 ("Although . . . recitations of testimony may properly be included in an order denying suppression, they cannot substitute for findings of fact resolving material conflicts.").

¶ 47        We therefore remand for further findings of fact consistent with this opinion.

### C. Instruction Regarding Actual Knowledge of Serial Number Removal

¶ 48        On remand, the determination of the firearm's accessibility will directly impact not only the validity of the trial court's order denying Defendant's suppression motion and Defendant's conviction for the non-vacated offense of carrying a concealed weapon, but also Defendant's conviction for possession of a firearm with an altered/removed serial number. Consequently, Defendant's third challenge raised on appeal pertaining to the trial court's jury instruction as to the charge of possession of a firearm with an altered/removed serial number, as well as his claim of ineffective assistance of counsel, are dismissed without prejudice as they are not yet ripe.

### <u>CONCLUSION</u>

¶ 49        The trial court lacked jurisdiction over the charge of possession of a firearm by a felon due to the State's failure to obtain a separate indictment for that charge in compliance with N.C.G.S. § 14-415.1. Further, the trial court failed to make

necessary findings of fact regarding the seized firearm's accessibility, this error was potentially sufficiently prejudicial to Defendant, and further findings of fact are needed to resolve the material conflict of the firearm's accessibility. In light of the impact these findings of fact may have on Defendant's remaining non-vacated convictions, Defendant's challenge to the trial court's jury instruction as to the charge of possession of a firearm with an altered/removed serial number, as well as his claim of ineffective assistance of counsel, are not yet ripe for our consideration.

VACATED IN PART; REMANDED FOR FURTHER FINDINGS IN PART; DISMISSED WITHOUT PREJUDICE IN PART.

Judges DIETZ and CARPENTER concur.